ORFINGER, J.
Kenneth Keith appeals from an order denying his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850, following an evidentiary hearing. We affirm, but write to address one issue.
Keith was convicted of two counts of sexual battery on a child less than twelve years of age. His convictions were affirmed on appeal. Keith v. State, 958 So.2d 944 (Fla. 5th DCA 2007) (Table). The charges against Keith arose after his daughter, M.K., born in 1984, came forward in 2000, alleging that Keith sexually molested her from when she was three or four years old until 1993, when she was in third grade and Keith and his wife, M.K.’s mother, divorced. Following the disclosure, M.K., then sixteen years old, was examined by a Child Protection Team (CPT) nurse. While the CPT report reflected that M.K. gave a history of penile/vaginal penetration by Keith, the examination revealed no signs of genital trauma. During the 2006 trial, Marilyn Barnes, a CPT pediatric nurse practitioner who did not author the CPT report, confirmed that the CPT report indicated there was no physical evidence of sexual abuse, including no evidence of any tear of M.K’s hymen. However, she indicated that a child can be sexually penetrated without damage to the hymen.
At the evidentiary hearing on the rule 3.850 motion, Keith’s trial counsel, Andrew Pozzuto, testified that the theory of Keith’s defense was to try to show that M.K. made up the allegations against Keith because she was upset that he had not seen her *87 since the divorce. Pozzuto believed that the CPT report, showing no physical evidence of penetration, called her credibility into question, particularly in light of M.K.’s admission that she had been sexually active with her boyfriend for a year prior to the CPT examination. Since there was no physical evidence to substantiate M.K’s claim of penile and digital penetration, Pozzuto saw no need to retain a medical expert. However, he said that he was surprised when, as he described it, Ms. Barnes testified at trial that a child’s hymen can “re-grow.”
Following the evidentiary hearing, the trial court entered a detailed order denying postconviction relief. The court ruled that Keith had not demonstrated that his defense was prejudiced, as he failed to offer any evidence at the postconviction hearing to contradict Ms. Barnes’s testimony.
Consistent with the United States Supreme Court’s decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Florida Supreme Court held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (citations omitted). Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the trial court’s factual findings that are supported by competent, substantial evidence, but reviewing the trial court’s legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).
To prove the first prong, Keith must prove that counsel’s performance was unreasonable under “prevailing professional norms.” Morris v. State, 931 So.2d 821, 828 (Fla.2006) (quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052). In other words, Keith must establish that “counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.” Strickland, 466 U.S. at 687,104 S.Ct. 2052; see Cherry v. State, 659 So.2d 1069, 1072 (Fla.1995). To establish the second prong, Keith must prove that there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 669. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Id. at 687.
“Judicial scrutiny of counsel’s performance must be highly deferential,” and there is a strong presumption that trial counsel’s performance was not ineffective. Hurst v. State, 18 So.3d 975, 996 (Fla.2009) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052). “A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from *88 counsel’s perspective at the time.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Therefore, Keith carries the burden to “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’” Id. (quoting Michel v. Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).
In the instant case, Pozzuto wanted the jury to hear from Ms. Barnes that there were no physical signs of sexual abuse. Understandably, Pozzuto believed that this lack of physical evidence of abuse was at odds with M.K’s claim that she had been penetrated by Keith, and had a year-long sexual relationship with her boyfriend. Thus, as part of his trial strategy, Pozzuto planned to argue to the jury that it was inconceivable that M.K. could claim digital and penile penetration by Keith and an active sexual relationship with her boyfriend, and yet have an intact hymen. But, this strategy suffered a serious blow, when, according to Pozzuto, Ms. Barnes testified that a hymen can regenerate.
However, we think that Pozzuto’s recollection mischaracterizes Ms. Barnes’s testimony. A careful reading of her testimony reveals that she did not testify that a hymen can regenerate. She simply stated that a child can be sexually penetrated without lasting signs of a tear in the hymen. This testimony, unanticipated by the defense, provided an explanation for M.K.’s intact hymen and offered the jury a way of reconciling M.K.’s testimony about penetration with the lack of physical evidence. Because Pozzuto did not anticipate this aspect of Ms. Barnes’s testimony, he did not have any evidence to rebut it.
The question here is whether Pozzuto was ineffective in failing to anticipate Ms. Barnes’s testimony, and more specifically, in failing to adequately challenge and rebut that testimony. At trial, Pozzuto did not object to Ms. Barnes’s testimony, which admittedly went beyond the findings of the CPT report. He also did not move to strike the testimony or for a mistrial, a Richardson[1] hearing, or a continuance to obtain a defense expert to counter this surprise testimony. And while Pozzuto did not conduct Ms. Barnes’s cross-examination,[2] he was unable to explain why she was not cross-examined about how M.K’s hymen could be intact despite her claims of penetration. Instead, he simply indicated that he had no desire to “to rehash everything” for the jury to hear again about penetration. In short, Ms. Barnes was not challenged on a critical aspect of the defense.
Still, even if we conclude Pozzuto’s representation fell below professional norms, Keith has not demonstrated prejudice. At the postconviction hearing, Keith failed to offer any evidence to cast doubt on Ms. Barnes’s testimony. In the absence of such evidence, the trial court was correct in concluding that Keith had failed to demonstrate how the defense was prejudiced by the defense’s shortcomings such “that confidence in the outcome is undermined.” Hurst, 18 So.3d at 995.
Holsomback v. White, 133 F.3d 1382 (11th Cir.1998), which Keith relies on for reversal, is instructive. In Holsomback, the defendant’s ten-year-old son claimed that the defendant sodomized him over a five-year period between the time that he was four and nine years of age. No medical evidence supported the child’s allegations and the only evidence presented at trial was the son’s and father’s conflicting testimonies. The child’s physician, who had examined the child after the allegations surfaced, was never interviewed be *89 fore trial or called as a witness at trial. Instead, the defendant’s counsel was content to rely on a strategy that the child was not telling the truth and that the case was simply a swearing match. However, defense counsel made no effort to support the defendant’s claim of innocence with medical testimony suggesting that the child’s allegations were not credible. In concluding that the defendant’s counsel’s lack of any pre-trial investigation into the medical aspect of the case was ineffective, the appellate court noted that the child’s physician testified at the evidentiary hearing on the postconviction motion that the child’s account of the abuse was medically impossible. According to the child’s physician, physical evidence of trauma to the anal area would be apparent to any doctor performing a rectal exam on a child who had been regularly sodomized within the past year. Thus, in light of the child’s physician testimony, the court found that under the specific circumstances of the case, the defense was sufficiently prejudiced by counsel’s failure to conduct an adequate pre-trial investigation such that confidence in the trial outcome was undermined.
Here, unlike in Holsomback, Keith offered no evidence at the postconviction proceeding, expert or otherwise, to counter Ms. Barnes’s trial testimony suggesting M.K. could have been sexually penetrated without lasting evidence of a tear in the hymen. In the absence of such evidence, Keith has failed to demonstrate prejudice, i.e., a reasonable probability that but for Pozzuto’s errors, the result of the proceeding would have been different.
AFFIRMED.
PALMER and JACOBUS, JJ., concur.

. Richardson v. State, 246 So.2d 771 (Fla.1971).

. Another attorney served as co-counsel.